Shasta HATTER, a minor, by Jane Gordon, her next friend and Julie Johnston, a minor, by Caroline (Daniels) Connell, her next friend, both individually and on behalf of all others similarly situated, Plaintiffs-Appellants,

v.

LOS ANGELES CITY HIGH SCHOOL DISTRICT et al., Defendants-Appellees.

No. 26031.

United States Court of Appeals, Ninth Circuit.

Nov. 22, 1971.

Mary K. Gillespie, San Pedro, Cal. (argued), Diane Wayne, of Christy & Wayne, Hollywood, Kenneth Cloke, of Buckley, Diamond & Levenson, Venice, Cal., for appellant.

Philip S. Miller, Deputy County Counsel, (argued), John D. Maharg, County Counsel, Los Angeles, Cal., for appellee.

Kenneth Hecht, of Youth Law Center, San Francisco, Cal., for the amicus curiae.

Before MERRILL, BROWNING and HUFSTEDLER, Circuit Judges.

MERRILL, Circuit Judge.

Plaintiffs Shasta Hatter and Julie Johnston, students at Venice High School in Los Angeles, protested their school's dress code by urging students to boycott the school's annual chocolate drive, which was being conducted to raise money for various student functions. Hatter passed out leaflets before school from a street corner across from the school grounds. She was suspended from school for the duration of the chocolate drive. Johnston wore a tag on her dress with the militant slogan: "Boycott Chocolates." The tag was removed from her dress by school administrators. She was reprimanded and threatened with suspension if she were to wear it again.

Plaintiffs brought a class action under 42 U.S.C. § 1983 alleging infringement of their constitutional rights of free speech and due process. They sought an injunction against further interference with peaceful protest by passing out leaflets and wearing tags, a declaration of their right to distribute leaflets off campus and wear tags on campus that expressed criticism of school policies, an order requiring school officials to expunge from school records all mention of the disciplinary action taken against them, and damages and costs.

The District Court denied plaintiffs' request for a preliminary injunction and, sua sponte, dismissed the complaint without leave to amend on the ground that it failed to state a claim and could not be cured by amendment. 310 F.Supp. 1309 (C.D.Cal.1970). This appeal followed.

1. *Denial of Temporary Injunction*

■ The court denied the injunction on two grounds. First, it concluded that the controversy had been rendered moot in that Hatter's suspension had ended, the chocolate drive was over, the dress code had been modified (although not to plaintiffs' complete satisfaction) and there was no allegation of any specific act threatened by school administrators that warranted court intervention. Appellees before us suggest that since the decision below new developments have added further support to the court's ruling in this respect: neither Hatter nor Johnston is now a student at Venice High School, and the dress code has now been repealed.

Whether repeal of the dress code puts an end to any continuing controversy with respect to the rights of students of Venice High School peacefully to protest school policies is a question we need not reach and, in our view, one we should not attempt to determine on the inadequate record before us. However, so long as disciplinary measures taken against Hatter and Johnston remain unexpunged from school records they threaten prejudice with respect to college admission and future employment. On this basis we conclude that the District Court was in error in ruling that the controversy had been rendered moot.

■ The temporary injunction was denied on the further ground that there was no showing of urgency or need for interlocutory relief. We find no abuse of discretion in this respect. Accordingly, the order denying a temporary injunction is affirmed.

2. *Dismissal*

■ It appears that the District Court was under the impression that the disciplining of Hatter and Johnston was for violation of school regulations respecting the distribution of material on school grounds without permission, and that the issue presented was as to the right of the school to restrain First Amendment rights by resort to such regulation. However, this was not the case. The record does not indicate that any regulation was violated or that discipline was imposed for such violations or for disobedience of any order.

The opinion of the District Court also suggests that schools should be free to

restrain the expression of opinion by students so long as the subject of discussion does not relate to issues of "great national concern." It concluded that the matter here at issue was "without weight or substance and \* \* \* raises no question of constitutional proportions." On this basis the lower court sought to distinguish Tinker v. Des Moines Indep. Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).

In this we disagree. At issue is the right of students peacefully to protest policies of their school that serve to restrain their freedom of action. That these policies may not directly affect the adult community or concern the nation as a whole is of no moment. As stated in *Tinker, supra,* at 511, 89 S.Ct. at 739: "Students in school as well as out of school are 'persons' under our Constitution." They are entitled in the absence of compelling countervailing considerations to exercise their First Amendment right to freely express themselves upon those issues which concern them. It is not for this or any other court to distinguish between issues and to select for constitutional protection only those which it feels are of sufficient social importance.[1]

Before us the appellees support dismissal (and seek further to distinguish *Tinker*) on the ground that appellants' actions served to disrupt orderly school operations. This fact does not appear from the complaint, however, and thus does not warrant dismissal for failure of the complaint to state a claim. The nature of the asserted disruption is set forth in affidavits of teachers who found it difficult to persuade their students to confine themselves to their classroom subjects since the students wished to discuss the proposed boycott. Appellants contend that any disruption that occurred was not material, that it was not such a disruption as can be attributed to them, that they did not advocate or foment it, and that if it resulted it was due to the discussability of the thoughts they expressed and lack of restraint on the part of the students.[2]

The issue of disruption thus remains to be resolved by further proceedings below in which the facts can be more fully developed and the applicable law ascertained.

Upon its order of dismissal, the District Court is reversed and the matter remanded with directions to vacate that order and to conduct further proceedings.

1. *See* Thomas v. Collins, 323 U.S. 516, 531, 65 S.Ct. 315, 323, 89 L.Ed. 430 (1945) ("the rights of free speech and a free press are not confined to any field of human interest").

2. Also presented in this case is the question —raised by the action taken against Hatter—as to the constitutional acceptability of interference by school officials with protected expressive activity engaged in outside of school grounds, whatever the subsequently developing factual context of that activity. *See* Sullivan v. Houston Indep. School Dist., 307 F.Supp. 1328, 1340–1341 (S.D.Tex.1969); Buttny v. Smiley, 281 F.Supp. 280, 286 (D.Colo. 1968); 1 T. Emerson, D. Haber & N. Dorsen, Political and Civil Rights in the United States, 1045, 1047 (3d ed. 1967); Developments in the Law—Academic Freedom, 81 Harv.L.Rev. 1045, 1132 (1968).